LIFE ASSOCIATION OF AMERICA v. ABRAHAM COOK, *et al.*

1. DOMESTIC LIFE INSURANCE COMPANY; *Power to Invest Funds, and Take Mortgages.* Under chapter 93, Laws of 1871, relating to the insurance department, a life insurance company organized under the laws of Kansas may purchase or invest its funds in notes secured by mortgages on unincumbered real estate worth fifty per cent. more than the sum so loaned thereon, and may take a real-estate mortgage concurrently with the loan, in order to secure it.

2. FOREIGN LIFE INSURANCE COMPANY; *Power to Loan Funds in Kansas; Pleading.* Where a life insurance company, organized under the laws of Missouri, brought its action to foreclose a real-estate mortgage executed in this state by C., and made one W. (the holder of a subsequent mortgage) a defendant, and in its petition set forth a copy of the mortgage, and the usual allegations in petitions of this character, and also stated that it was an incorporated life insurance company, duly incorporated under the laws of Missouri, that it was duly authorized to transact business in the state of Kansas, and to loan money on real estate; that it had fully complied with the laws of the state of Kansas relating to foreign insurance companies, and was duly authorized to transact business in the county where the mortgaged premises were situate; and as to the defendant W. further stated, that said defendant had or claimed to have some interest in the mortgaged premises which was *subject* and *inferior* to the lien of the plaintiff, and default was made by C., and W. filed an answer, unverified, setting up a subsequent mortgage, and alleging that prior to the execution of the mortgage sued on by plaintiff, C. was not indebted to the plaintiff, that the mortgage was not given to secure any preëxisting debt, that the plaintiff had no legal capacity to loan money and take mortgage security therefor in this state, *held,* that the answer was no defense to the cause of action of the plaintiff.

3. ——— If a defendant wishes to raise by his answer the question that the loaning of money by a foreign insurance company on real-estate se-

curity in this state is *ultra vires*, and forbidden, he should plead its charter, or the laws of the state where it was organized, or both such charter and laws, and on the trial produce the same in evidence.

### *Error from Miami District Court.*

FORECLOSURE of mortgage, brought by the *Life Association of America*, a foreign life insurance company, against *Abraham Cook* and wife, and *H. E. Westerman*. All necessary facts and proceedings are set forth in the opinion, *infra*. The district court, at June Term 1875, adjudged that the mortgage executed by *Cook* and wife to plaintiff was void, and that the mortgage on the same premises executed by *Cook* and wife to *Westerman*, was valid, and was the first and paramount lien on the lands described therein. The plaintiff appeals, and brings the case here on error.

*William Dill*, for plaintiff:

1. The answer of Westerman raised no issue, and the court erred in not giving judgment for plaintiff on the pleadings. 4 Kas. 42; 5 Kas. 393; 8 Kas. 276, 376; 10 Kas. 103, 112; 11 Kas. 447. Plaintiff's petition alleged authority to make the loan to Cook, and Westerman's answer was not verified. Civil code, §108.

2. If Westerman intended by her answer to deny that plaintiff had the power to enter into the contracts set out in its petition, the plea goes to this extent alone, that under the laws of Kansas it was *ultra vires* for an insurance corporation to loan money on real estate. In answer we say, that the laws of Kansas then in force on the subject (ch. 93, laws of 1871,) did not prohibit insurance companies from loaning money on real-estate security; and as the plea, if it amounted to anything, pleaded a statutory inability, and an examination of the statute showed no such inability, the court should have sustained the plaintiff's motion for judgment.

3. There was no evidence to sustain any of the findings or judgment, that plaintiff's mortgage was null and void; that plaintiff's mortgage was no lien on the real estate in it de-

scribed; that Westerman's mortgage was a first lien, and that her mortgage should be first paid out of the proceeds of said real estate. It is true, both mortgages bear date of the same day; but Westerman's was not recorded until sixty-eight days after plaintiff's; besides, plaintiff in its petition alleges that Westerman's mortgage is subject and inferior to plaintiff's, which is not denied by the answer, and therefore must be taken as admitted. No claim was made or could be maintained, that Westerman's mortgage was executed before plaintiff's.

We do not believe that the answer properly raises the issue of want of power on the part of the plaintiff to enter into the contracts sued on. But suppose for the purpose of the argument, it does raise this issue: what laws, does it say, incapacitate plaintiff from loaning money on real-estate security? None are set out in the answer. If the laws of Missouri are referred to, then, as they are not set out, they must be considered as the same as the laws of this state on the same subject. (10 Wend. 75; 1 Hill, 270; 1 Paige, 220; 3 Barb. 20; 23 Barb. 498; 1 Denio, 367.) What is there in the laws of Kansas that prohibited plaintiff from loaning money? The law then in force on the subject of insurance, was ch. 93 of the laws of 1871. Sec. 54 of said chapter provides that "any life insurance company may purchase or invest, by loan or otherwise, any of their funds in bonds, or notes and mortgages, on unincumbered real estate," etc. Thus it is seen that so far from prohibiting the loaning of money, the law distinctly permits it, and indeed, in other sections requires it as one of the necessary investments to be made of its funds. (Secs. 48, 49.) But it was claimed that §71 of this chapter prohibited the taking of mortgages. But this section prohibits the *purchasing, holding,* or *conveying* real estate. It does not prohibit the taking of *mortgages* on real estate. The status of a mortgagee of real estate in Kansas, is well defined in the oft-referred-to case of *Chick v. Willetts,* 2 Kas. 384. The mortgage vests no estate whatever, either before or after default in the mortgagee. The mortgagee

is therefore not the *purchaser;* and the prohibition of this section cannot be extended to the taking of mortgages. (*Blunt v. Walker,* 11 Wis. 334.) It was claimed, however, that the second exception given in §71 of said ch. 93, prevented the taking of mortgages, except by way of security for loans *previously* contracted. But this exception should be read in connection with the first part of the section, and it will thus be seen that the prohibition is against "*purchasing, holding, or conveying* real estate," except "such as shall have been mortgaged in good faith by way of security for loans previously contracted for moneys due." The prohibition, in all instances, is against *purchasing, holding,* or *conveying.* The exception is, that it may purchase, hold, etc., such lands as had *previously* been mortgaged to it in good faith, if the mortgage debt was due—the word "previously" affecting and relating to the time of *purchasing, holding,* etc. The whole of this statute should be construed together. Secs. 48, 49 and 54 not only permit the loaning of money upon real-estate security, but distinctly require the company to so invest its funds, if it has not sufficient investments in other securities. It would therefore be the most strained, unnatural and unreasonable construction of this exception, to make the word *previously,* as therein used, apply to the creation of the debt, before the execution of the mortgage, so as to prevent taking of mortgages, except for *debts* or loans previously contracted. *Silver Lake Bank v. North,* 4 Johns. Ch. 370.

There are some national-bank cases in which a section of the national-banking act similar to the one under consideration has been considered and discussed. The most fully-considered case is that of *Fowler v. Scully,* 72 Penn. St. 456. But it will be observed, upon an examination of that case, and of the national-banking act, that the banks are specifically prohibited from loaning on real-estate security, and are permitted to loan on personal security only.

The very existence of an insurance company depends upon its investing its funds, so that it may be enabled to meet its accruing liabilities upon its policies. The very theory of life

insurance is based upon a nice calculation, that a certain fund invested at a certain rate of interest, will meet the losses occurring on a certain number of insured lives; and if an investment of its funds is necessary for it to carry on its business, what reason is there for preventing it from taking the most approved securities, as mortgages on real estate? Certainly no reason can exist; and unless the statute arbitrarily prohibits such investments, they would be the most proper. We think that the statute not only does not prohibit such investments, but distinctly permits and requires them.

The opinion of the court was delivered by

HORTON, C. J.: Plaintiff in error, as plaintiff below, filed its petition in the district court on the 25th of August 1874, against defendants Abraham Cook, Elenah Cook, and H. E. Westerman, to foreclose a mortgage on certain real estate situate in an addition to the city of Paola, Miami county, the Cooks being the mortgagors, and Westerman holding a second mortgage on the same property. The Cooks made default, though they were duly served with summons. The petition sets forth a copy of the mortgage, that the plaintiff was an incorporated life insurance company, duly incorporated under the laws of the state of Missouri, and duly authorized to transact business in the state of Kansas, and to loan money on real-estate security, having fully complied with the laws of the state of Kansas relating to foreign insurance companies, and being duly authorized to transact business in said Miami county; that it had been compelled to pay certain taxes on the mortgaged premises to save its lien and security; that the defendant Westerman had or claimed to have some interest in the mortgaged premises, but the exact nature of which the plaintiff was not acquainted with, but averred that it was subject and inferior to the lien of plaintiff; and in addition, the petition contained the usual averments of the nonpayment of the note, taxes, etc. Westerman filed her answer on the 5th of October 1874. This answer

contained no general denial, but alleges the execution by Cook of a note to her, and the execution of a mortgage by both Cooks, on same property which had been mortgaged to plaintiff, to secure said note. Her answer further averred, "that the said mortgage sued upon by plaintiff in this action was null and void, and of no force and effect; that prior to the making of said mortgage by the said Abraham Cook and Elenah Cook, neither of said parties was indebted to said plaintiff, and that said mortgage was not given to secure any preëxisting debt; that said plaintiff was a foreign life insurance corporation, and as such had no legal capacity to loan money and take mortgage security therefor, in the state of Kansas, or to take, hold, and receive a mortgage for the security of money so loaned in the state of Kansas at the time of said loan, and especially that said plaintiff had no legal capacity to take and receive and hold the mortgage herein sued upon in this action; that said plaintiff was not authorized to loan money in the state of Kansas; that said plaintiff had no legal capacity to transact any business within this state; that said plaintiff had no authority and no legal capacity to loan money in the state of Kansas, and take mortgage security therefor, at the time of the transaction of said loan." This answer was not verified, and to it plaintiff for reply filed a general denial.

The pleadings showed that the mortgage given by the Cooks to the insurance company was dated 10th January 1873, and filed for record the same day at $4\frac{1}{2}$ o'clock P. M. The mortgage to Westerman was executed the same day, but not filed for record until March 18th 1873. On the hearing of the cause, at the December Term 1874 of the district court, after a motion for judgment on the pleadings, filed by the plaintiff, had been overruled, the case was tried by the court, a jury having been waived, and personal judgments were rendered against defendants Cook in favor of plaintiff and Westerman, and the decree ordered the mortgage property to be sold to satisfy such judgments, but provided that the proceeds of the sale should be brought into court to abide its

further order. Afterward, on the 5th of June 1875, on the application of both plaintiff and Westerman, the court tried the issues between them, as to the priority of their respective mortgages. Upon this trial the court found that "the mortgage of the plaintiff was null and void, and no lien upon the real estate described in its petition, and that Westerman's mortgage was a first and valid lien on said real estate, and thereupon ordered, adjudged, and decreed that Westerman's mortgage was a first lien on said premises, and should be first paid out of the proceeds of said sale, and was prior to that of the plaintiff, and that the mortgage of the plaintiff was null and void as against the mortgage of the said H. E. Westerman." To all of which plaintiff duly excepted.

No testimony was offered by either party at any stage of the proceedings in the case, except the exhibits attached to the respective pleadings, and on the part of the plaintiff the original tax redemption certificate, and the original renewal premium receipt for insurance on the mortgaged premises. Upon what basis the court held the mortgage of the insurance company null and void, in view of the pleadings, we are at a loss to determine; and the defendants in error have not thought it wise, or at least necessary, to enlighten us. No brief or other argument has been filed or presented in their interest. No issue whatever was presented in the pleadings between the insurance company and Westerman, as the answer of the latter did not deny the allegation of the petition, that her mortgage was subject and inferior to the lien of the insurance company. And the copies of the two mortgages evidenced this statement. Neither was any defense properly pleaded to the first or prior mortgage; and the court below would not have committed any error in sustaining the motion for judgment on the pleadings in favor of the plaintiff. *Gaylord v. Stebbins*, 4 Kas. 42; *Douglas v. Rinehart*, 5 Kas. 393; *Reed v. Arnold*, 10 Kas. 103; *School District v. Carter*, 11 Kas. 445. Certainly, in view of the evidence and the condition of the cause at the June Term 1875, from whatever point it is judged, the district court had no right to de-

3—20 KAS.

clare the plaintiff's mortgage null and void, and no lien upon the real estate therein described; nor could it rightfully decree the Westerman mortgage a first lien on the premises. All of these rulings were erroneous, and demand a reversal at our hands.

If the district court assumed the question was raised, that under the laws of this state the plaintiff had no right to take a mortgage concurrently with the loan, in order to secure it, and was only authorized to take mortgages "by way of security for loans previously contracted, or for moneys due," (and we consider the judgment in this light,) then we must hold the various provisions of our statutes relating to the powers of life insurance companies were wrongly construed. The law concerning insurance companies in force at the execution of these mortgages was ch. 93, Laws of 1871, pp. 214, 249. Sec. 71 provides, that—

"No insurance company, organized under the laws of this state, shall be permitted to *purchase, hold, or convey* real estate, excepting for the purpose and in the manner herein set forth, to-wit: *First,* such as shall be requisite and convenient for its accommodation in the transaction of its business; or *second,* such as shall have been mortgaged in good faith by way of security for loans previously contracted for moneys due; or *third,* such as shall have been conveyed to it in satisfaction of debts previously contracted in the course of its dealings; or *fourth,* such as shall have been purchased at sales upon the judgments, decrees, or mortgages obtained or made for such debts."

But this must be construed in connection with section 54 of the same chapter, to the effect that, "any life insurance company * * * may * * * purchase or invest, by loan or otherwise, any of their funds in bonds, or notes and mortgages, on unincumbered real estate worth fifty per cent. more than the sum loaned thereon," etc., (and see sections 47, 48 and 49 of the act.) Recollecting that under our laws a mortgage is a mere security, creating a lien upon the property but vesting no estate whatever, either before or after condition broken, subdivision 2 of sec. 71, above quoted, read in connection with the other sections quoted, and the first part of

said section 71, is a prohibition only against purchasing, holding, or conveying real estate, except such as shall have been mortgaged in good faith by way of security for loans previously contracted, or for moneys due. In the language of the counsel for the plaintiff, we reach the conclusion, "that the very existence of an insurance company depends upon its investing its funds, so that it may be enabled to meet its accruing liabilities upon its policies. The very theory of life insurance is based upon a nice calculation, that a certain fund, invested at a certain rate of interest, will meet the losses occurring on a certain number of insured lives;" and in this state, the prohibition against such a company *purchasing*, or *holding* real estate, stated in said subdivision 2 of section 71, "is against *purchasing*, *holding*, or *conveying*. The exception is, that it may purchase, hold, etc., such land as had previously been mortgaged to it in good faith, if the mortgage was due; the word *previously* affecting and relating to the time of *purchasing*, *holding*, etc." *Silver Lake Bank v. North*, 4 Johns. Ch. 371. The case of the *Kansas Valley National Bank of Topeka v. Rowell*, 2 Dillon C. C. Rep. 371, is no authority in this case, because the provisions of the national banking act, relating to the loaning of money and taking security therefor, are materially different from the sections of the Kansas insurance act of 1871. The former act provides that no other security than *personal* can be taken for money lent. *Fowler v. Scully*, 72 Penn. St. 456. The latter authorizes loans to be made on real estate. In this case, if defendant Westerman wished to raise by her answer the question that the loaning of money by the plaintiff to Cook on real-estate security in Kansas was *ultra vires*, and *forbidden*, she should have pleaded its charter, or the laws of the state where it was organized, or both such charter and laws, and on the trial produced the same in evidence.

The judgment of the district court of the June term 1875 must be reversed; and such court is directed to carry into effect its decree of December 1874, so far as to have the judgments therein rendered duly enforced, and to adjudge

the mortgage of plaintiff a first and prior lien to that of Westerman, and order that from the proceeds of the sale of the mortgaged premises the judgment of plaintiff be paid in full, including interest, taxes, attorney-fees, and costs, before any of the proceeds of the sale shall be applied to the judgment of the said Westerman.

VALENTINE, J., concurring.

BREWER, J., not sitting in the case.