Decided 10 November, 1902.

## UNITED STATES MORTGAGE CO. *v.* McCLURE.

[70 Pac. 543.]

REMOVAL TO FEDERAL COURT—PROVINCE OF STATE COURT.

1. Upon the presentation to a state court of a petition to remove a pending case to a federal court, the sufficiency of the petition and the effect of the statements appearing on the face of the entire record are to be determined by the state court.

REMOVAL—WHAT CONSTITUTES THE RECORD.

2. In passing upon a petition to remove a case to a federal court the state court may consider all pleadings and proceedings in the case to and including the petition.

REMOVAL TO FEDERAL COURT—NOMINAL PARTIES.

3. Under a statute providing that in mortgage foreclosure cases a personal judgment may be rendered against such persons as have rendered themselves individually liable for the payment of the principal debt (*i. e.,* section 414, Hill's Ann. Laws), a corporation and its receiver who have been made parties defendant to a mortgage foreclosure, and appear by the complaint to be personally liable for the principal debt, are not mere nominal parties so that they can be eliminated in determining the right of removal to the federal court. This is true even though the petition for removal alleges that the corporation and the receiver have been released and discharged from personal liability, for such a defense is personal to them, and the rights of the parties must be determined from the face of the entire record.

REMOVAL OF CAUSE—SEPARABLE CONTROVERSY.

4. It being necessary in a mortgage foreclosure suit to join as defendants all persons against whom plaintiff desires to recover a personal judgment, the cause is not separable, in a removal sense and without plaintiff's consent, as between the plaintiff and a purchaser of the land who has not become personally liable.

CONTRACTS OF CORPORATIONS—PRESUMPTION—ULTRA VIRES.

5. *Prima facie* the contracts of a corporation are valid, and the objection of *ultra vires* is one that must be made by the person claiming it; in pleading, therefore, a complaint by a corporation need not aver that a contract sued on was within its powers, but the objection thereto as beyond the corporate power must be affirmatively set forth in the answer.

PROVING THE EXISTENCE OF A LEGISLATIVE CORPORATION.

6. In proving the evidence of a corporation created by a legislative act it is sufficient *prima facie* to produce a duly authenticated copy of the charter with evidence that the company has transacted business: *Goodale Lum. Co.* v. *Shaw,* 41 Or. 544, distinguished.

IDEM—SUFFICIENCY OF EVIDENCE.

7. In proving the existence of a corporation created by an act of the legislature, certified copies of the special act incorporating the company and of acts amendatory thereof, the resolution of the company to change its corporate name, the order of a court of competent jurisdiction authorizing the change, acts of the company in executing two powers of attorney,—one under its name as first incorporated, and the other under its name as changed,—and the loaning of money, and the taking and accepting of certain notes and mortgages show a grant of power and a user thereunder; making out a *prima facie*

showing that the conditions prerequisite to the assumption of the power conferred were complied with.

Leave to Answer After Plea in Abatement.

8. A defendant has no absolute right to more than one answer, and if that answer is used in making a plea in abatement, the court may or may not grant leave to answer to the merits after the answer in abatement has been decided against the pleader.

From Multnomah: Arthur L. Frazer, Judge.

This is a suit by the United States Mortgage and Trust Company to foreclose a mortgage. The complaint sets up the incorporation and organization of the plaintiff under and by virtue of the laws of the State of New York; the incorporation of the defendant the Portland Savings Bank; the appointment of Richard Nixon as receiver thereof, and his continuance to the present time in that capacity; the incorporation of the defendant Topaz Land Company; the execution by the Portland Savings Bank of its certain promissory note for the sum of $150,000, and other notes covering interest charges, and the mortgage in question, upon lots 1 and 2 in block 19 in the City of Portland, to secure the payment of the same to the plaintiff; the assumption by Richard Nixon, as receiver, of the payment of $140,000 of such liability and accruing interest; the succession of the Topaz Land Company, and subsequently Henry F. McClure, to the equity of redemption in the lots; and the insolvency of the Portland Savings Bank. Five days after the filing of the complaint, Henry F. McClure and wife appeared and filed a petition for the removal of the cause to the circuit court of the United States, showing that the controversy was wholly between citizens of different states, namely, between petitioners, citizens of the State of Washington, on one side, and the plaintiff, a citizen of the State of New York, on the other, and that the petitioners are the only parties interested in the controversy; that the Portland Savings Bank and Richard Nixon are nominal parties only, neither of them having any interest in the controversy or the result of the suit; that, subsequent to the appointment of such receiver, he and plaintiff entered into a contract, upon a sufficient consideration, whereby both the Portland Savings Bank and said receiver were wholly

released and discharged from all personal liability on account of or by reason of said notes or mortgages mentioned in the complaint, or other obligation, which said contract has been judicially determined, in controversies between plaintiff and said receiver, to be valid, operative, and binding, and that neither said bank nor receiver is liable to plaintiff for any part of any sum which may be found to be due upon any of said obligations; and that Henry F. McClure has succeeded to the interest of the savings bank in the premises. The petition having been denied, further proceedings were had, resulting in a decree for plaintiff, foreclosing its mortgage, from which decree defendants Henry F. McClure and wife appeal. Other facts necessary to a full understanding of the controversy appear in the opinion.                              AFFIRMED.

For appellants there was an oral argument by *Mr. Parrish L. Willis*, with a brief over the name of *Guy G. Willis*, to this effect:

I. When the petition for removal and a sufficient bond were filed the jurisdiction of the state court at once ceased, and all issues arising on the petition were determinable only in the federal court: *Steamship Co.* v. *Tugman*, 106 U. S. 122 (1 Sup. Ct. 58) ; *Railroad Co.* v. *Mississippi*, 102 U. S. 135 ; *Railroad Co.* v. *Koontz*, 104 U. S. 5 ; *Burlington, C. R. & N. Ry. Co.* v. *Dunn*, 122 U. S. 513 (7 Sup. Ct. 1114) ; *Stone* v. *South Carolina*, 117 U. S. 430 (6 Sup. Ct. 799) ; *Carson* v. *Hyatt*, 118 U. S. 279 (6 Sup. Ct. 1050) ; *Wood* v. *Davis*, 59 U. S. 467 ; *Removal Cases*, 100 U. S. 457 ; *Sayer* v. *La Salle, etc., Coke Co.* 14 Fed. 69.

II. The complaint is fatally defective in not alleging the purposes for which plaintiff was incorporated, so that it can be determined whether it had any power to perform the acts on which this suit is based: *Lakin* v. *Willamette V. & C. R. Co.* 13 Or. 436 (57 Am. Rep. 25, 11 Pac. 68) ; *Dalles L. & Mfg. Co.* v. *Wasco W. Mfg. Co.* 3 Or. 528; *Devoss* v. *Gray*, 22 Ohio St. 171; *Frye* v. *Bank of Ill.* 5 Gilm. 335; *Bard* v. *Chamberlain*,

3 Sandf. Ch. 31; *Bank* v. *Earle,* 38 U. S. (13 Pet.) 589; *Head* v. *Providence Ins. Co.* 6 U. S. (2 Cranch) 167.

III. The proof of corporate existence was not sufficient: *Goodale Lum. Co.* v. *Shaw,* 41 Or. 544 (69 Pac. 546).

For respondent there was an oral argument by *Mr. William A. Munly,* with a brief over the names of *J. Thorburn Ross, E. B. Seabrook, W. A. Munly,* and *John K. Kollock,* to this effect:

I. The state court need not surrender its jurisdiction unless the record (including the petition for removal) shows facts sufficient to confer jurisdiction on the federal court: *Stone* v. *South Carolina,* 117 U. S. 430 (6 Sup. Ct. 799); *Railroad Co.* v. *Koontz,* 104 U. S. 5; *Knott* v. *McGilvray,* 124 Cal. 131 (56 Pac. 790); *Guarantee Co.* v. *National Bank,* 95 Va. 486; 18 Enc. Pl. & Pr. 338, note 5; *State* v. *Southern Pac. Co.* 23 Or. 424 (31 Pac. 96); *Koshland* v. *National Ins. Co.* 31 Or. 205 (49 Pac. 845).

II. A mortgagor of premises is an indispensable party defendant to a foreclosure suit where a deficiency judgment is sought, even though he has parted with title to the premises; in such cases there is no separable controversy: *Ayres* v. *Wiswall,* 112 U. S. 187 (5 Sup. Ct. 90); *Crump* v. *Thurber,* 115 U. S. 60 (5 Sup. Ct. 1154); *Coney* v. *Winchell,* 116 U. S. 228 (6 Sup. Ct. 366); *Winchell* v. *Carll,* 24 Fed. 865; *Thompson* v. *Dixon,* 28 Fed. 5; *Myer* v. *Denver, etc., R. Co.* 41 Fed. 723.

III. At common law a plea in abatement was a dilatory one, and the defendant went to trial on that plea with the peril that if unsuccessful he could proceed no further, and this rule has not been changed by our code, and it is as forceful now as it ever was, subject to the discretion of the court in allowing an amended answer to be filed when justice seems to require it: *John* v. *Clayton,* 1 Blackf. 53; *Atkinson* v. *State Bank,* 5 Blackf. 84; *Thompson* v. *Greenwood,* 28 Ind. 327; *Bodd* v. *Wagner,* 28 Ind. 462; *Mineral Point R. Co.* v. *Keep,* 22 Ill. 9 (74 Am. Dec. 124); *Brown* v. *Illinois Cent. Mut. Ins. Co.* 42 Ill. 366; *Peach* v. *Mills,* 13 Vt. 501; *Vauderberg* v. *Clark,*

22 Vt. 185; *Boston* v. *Langdon*, 24 Pick. (Mass.) 49 (35 Am.
Dec. 292); *Good* v. *Lehan*, 8 Cush. (Mass.) 301; *Dodge* v.
*Morse*, 3 N. H. 232; *Straus* v. *Weil*, 5 Cold. (Tenn.) 120;
*Myers* v. *Erwin*, 20 Ohio, 381; *Moore* v. *Morton*, 1 Bibb (Ky.),
234; *McCarter* v. *Chambers*, 6 Wend. 649 (22 Am. Dec. 556);
*Mechanics' & F. Bank* v. *Dakin*, 24 Wend. 411; *Alling* v.
*Shelton*, 16 Conn. 436; *Thompson* v. *Haislip*, 14 Ark. 220;
*Witmer* v. *Scholatter*, 2 Rawle (Pa.), 359; *Babcock* v. *Scott*,
2 Miss. (1 How.) 100.

IV. Replying to the many times buried theory that it is
necessary for the plaintiff both to allege and prove that it had
a right under its charter to enter into the contract sued upon,
we will say that this time-honored proposition has been effectu-
ally laid to rest, and not all the incantations of the learned
counsel can make its ghost walk. *Prima facie* contracts of
corporations are valid: *Alabama Life Ins. Co.* v. *Central Agr.
& Mech. Assoc.* 54 Ala. 73; *Boulware v. Davis*, 90 Ala. 211
(9 L. R. A. 601); *Torrent Fire Engine Co.* v. *City of Mobile*,
101 Ala. 559 (14 So. 557); *Weed* v. *Sewing Mach. Co.* 26 Ohio
St. 562; *Fuller* v. *Naugatuck R. Co.* 21 Conn. 557; *Baker* v.
*Northwestern G. Loan Co.* 36 Minn. 185 (30 N. W. 449); *St.
Paul Land Co.* v. *Dayton*, 37 Minn. 364 (34 N. W. 335); *Stod-
dard* v. *Onondaga Conference*, 12 Barb. 573.

V. *Ultra vires* is a defense to be pleaded, and the burden is
on the party seeking to escape an obligation on that plea:
*Young Men's Christ. Assoc.* v. *Duboch*, 82 Mo. 475; *America
L. Assoc.* v. *Cook*, 20 Kan. 19; *Bank* v. *King*, 47 Iowa, 64;
*Kentucky Lum. Co.* *v. Green*, 87 Ky. 257 (8 S. W. 439).

VI. Proof of the existence of a foreign or *de facto* corpora-
tion created by special statute is made by a certified copy of the
charter and proof of user: Thompson, Corp. § 220; *State
v. Savage*, 36 Or. 191 (60 Pac. 610); *Law Trust Soc.* v. *Hogue*,
37 Or. 544, 554 (62 Pac. 380, 63 Pac. 690); *McFarlan* v. *Triton
Ins. Co.* 4 Denio, 392; *United States Bank* v. *Stearns*, 15
Wend. 314; *Eaton* v. *Aspinwall*, 19 N. Y. 119; *Methodist E.
Church* v. *Pickett*, 19 N. Y. 482; *Leonardsville Bank* v. *Wil-
lard*, 25 N. Y. 575; *Jones* v. *Dana*, 24 Barb. 399; *Lamming* v.

*Galusha,* 81 Hun, 255; *Benesch* v. *Johnson Ins. Co.* 11 N. Y. Supp. 348; *Narragansett Co.* v. *Atlantic Co.* 3 Metc. 288; *Heaston* v. *Cincinnati & F. W. R. Co.* 16 Ind. 275 (79 Am. Dec. 430, note); *Stout* v. *Zulick,* 48 N. J. Law, 600; *Spring Valley Water Co.* v. *San Francisco,* 22 Cal. 441; *Gaines* v. *Bank of Miss.* 12 Ark. 769; *Miller* v. *Irrigation Dist.* 85 Fed. 698; *Hammer* v. *Garfield M. & Mill. Co.* 130 U. S. 291 (9 Sup. Ct. 548); *Baltimore & P. R. Co.* v. *Fifth Baptist Church,* 137 U. S. 568 (11 Sup. Ct. 185).

VII. There is a clear distinction between corporations created by legislative act and those organized under general laws: *Biglow* v. *Gregory,* 73 Ill. 194; *Mokelumne H. Min. Co.* v. *Woodbury,* 14 Cal. 427; *Abbott* v. *Omaha Smelt. Co.* 4 Neb. 423; *Gramby M. & Smelt. Co.* v. *Richards,* 95 Mo. 106 (8 S. W. 246); *Lamming* v. *Galusha,* 81 Hun, 255 (affirmed 151 N. Y. 648).

Mr. Justice Wolverton, after stating the facts, delivered the opinion of the court.

The first assignment of error relied upon, and the one most strongly contested, is the refusal of the trial court to direct a removal of the cause to the circuit court of the United States. Two grounds for the removal are relied upon: (1) That the controversy is in reality between the plaintiff, a citizen of New York, and the McClures, citizens of the State of Washington, the other defendants being merely nominal parties; (2) that the controversy is separable, so that the McClures alone, without joining their codefendants with them in the petition, were entitled to have the cause removed.

1. By the federal statute a suit of a civil nature, of which the courts of the United States are given original cognizance concurrent with the courts of the several states, may be removed from a state court into the circuit court of the United States by the defendant or defendants therein, being nonresidents of the state, or if there shall be a controversy wholly between citizens of different states, susceptible of a complete determination as between them, either one or more of the de-

fendants actually interested in the controversy may have such removal: 25 Stat. p. 433, c. 866, § 2. The question of removal must be determined by the state court solely upon the face of the record, and, if it appear therefrom that the statutory prerequisites exist, the cause must be removed; all questions of fact being for the circuit court of the United States to determine.

2. While this is true, the record, which it is the province of the state court to look into, and by which it shall determine whether the removal shall be ordered, comprises not alone the petition interposed for the removal, but all the pleadings and proceedings down to the filing of such petition: *Insurance Co.* v. *Pechner,* 95 U. S. 183; *Stone* v. *South Carolina,* 117 U. S. 431 (6 Sup. Ct. 799); *Burlington R. Co.* v. *Dunn,* 122 U. S. 513 (7 Sup. Ct. 1262).

3. The complaint shows that the Portland Savings Bank became personally obligated to pay plaintiff the sum of money to secure which the mortgage was executed, and, further, that Richard Nixon, receiver of the bank, became also personally liable for the payment of the balance after the application of $10,000 upon the principal sum. So that by this showing the plaintiff has a clear right of suit against them, and they are at least proper, if not necessary, parties to the foreclosure. This is essentially so under our statute, by which it is provided that "in such suit, in addition to the decree of the foreclosure and sale, if it appear that a promissory note or other personal obligation for the payment of the debt has been given by the mortgagor or other lien debtor, or by any other person as principal or otherwise, the court shall also decree a recovery of the amount, as the case may be, as in the case of an ordinary decree for the recovery of money": Hill's Ann. Laws, § 414. The plaintiff desiring a personal money decree against these parties, it was altogether proper to make them defendants, with the owners of the equity of redemption of the premises covered by the mortgage; and it goes without saying that they are parties having a substantial interest in the subject-matter of the controversy.

Nor does the application of the bank's insolvency relieve the situation in the least. The plaintiff has a right to a personal decree against it, although it may be unable for the present to enforce payment. Decrees and judgments are often procured and kept alive against insolvent parties with a hope that they may some time come into possession of property applicable to their satisfaction. It does not appear that the receiver has been discharged from his trust, although such may in reality be the case. In this view, as shown by the complaint, the bank and Nixon are more than nominal parties. They are interested and proper parties defendant, against whom the plaintiff could rightfully proceed in its foreclosure suit. True, it is alleged by the petition for removal that the bank and its receiver have both been duly released and discharged of all personal liability to the plaintiff, which shows them to be without substantial interest in the controversy, and, taken alone, would be conclusive as to their nominal character. But this cannot be said to be so when the complaint is considered. On its face, there exists a good cause of suit against both of these defendants. If they have been released from personal liability, that would, of course, be a defense, but they themselves must insist upon that; otherwise a decree would go against them by default, as it has in this case. Furthermore, the defense is personal, and the McClures are not in such privity with them as to make it available for their purpose.

4. Nor is the cause of suit against the defendants separable, so that a removal will be directed as to the McClures, without joining the other defendants in the petition therefor, unless with the assent of the plaintiff. As we have seen, the plaintiff is entitled, on the face of the complaint, to a personal decree against the bank and Nixon, to join them with the McClures in the suit for a foreclosure, and to pursue its remedy against all in the same procedure. The mortgage and the debt secured thereby present the subject-matter of the controversy in the case, and, in order that plaintiff may get all it asks and is entitled to ask upon its showing, it was obligated to make the bank and Nixon parties to the suit. Being so obliged to join

them, it may pursue its remedy against all to the end, and in this sense the cause is not separable: *Smith* v. *Day,* 39 Or. 531 (64 Pac. 812, 65 Pac. 1055); *Ayres* v. *Wiswall,* 112 U. S. 187. (5 Sup. Ct. 90); *Winchell* v. *Carll* (C. C.) 24 Fed. 865; *Coney* v. *Winchell,* 116 U. S. 228 (6 Sup. Ct. 366).

5. There was a demurrer to the complaint, which being over-ruled, a pleading denominated an "answer in abatement" was filed by McClure and wife, by which it was denied that plaintiff is a corporation organized or existing under the laws of the State of New York, or that it is a corporation doing business in the State of Oregon, under or by virtue of the laws thereof, or that it is a corporation at all: and it is affirmatively alleged that, if plaintiff is a corporation, it is a banking concern, and is and has been illegally doing business in Oregon; that it has never at any time executed or acknowledged, or caused to be recorded in the county clerk's office for Multnomah County, or in that of the recorder of conveyances, any power of attorney, as required by law. These matters were put in issue by the reply, which contains further matter showing a compliance with all prerequisites of the statute permitting foreign corporations to transact business in the state. The parties went to trial upon the issues thus formulated, and the court, having found for the plaintiff, refused to grant the request for leave to further answer the complaint upon the merits, basing the refusal upon the ground that defendants could not be allowed to answer more than once, and, having elected to answer in abatement, could not, under the law, thereafter be permitted to answer to the merits. Error is assigned in overruling the demurrer, in finding for the plaintiff upon the evidence at the trial under the issues thus formulated by the answer and reply, and in refusing leave to answer further to the merits.

We will consider the demurrer and the findings of fact under the issues tendered together, as they pertain to the same subject-matter. It is insisted that the complaint does not state facts sufficient upon which to base the suit, in that it does not set out the purpose for which the plaintiff was incorporated, so as to show its authority or power to loan money and enter

into the mortgage contract which the court is asked to enforce, and that the proofs fail to establish a perfect organization, because it does not show that $5,000,000 of the capital stock has been subscribed, and 20 per cent thereof paid in before commencing to do business. .A certified copy of the act of the New York legislature, passed May 12, 1871, incorporating the United States Mortgage Company, was introduced over objections, providing, among other things, that the company may commence business whenever capital stock to the amount of $5,000,000 shall have been subscribed, and 20 per cent shall have been paid thereon. Certified copies were also introduced, over objection, of two other acts of the legislature of New York, amendatory to this, which became laws March 31, 1894, and April 6, 1894, respectively. In addition thereto a resolution of the board of directors of the company, adopted May 17, 1894, declaring it expedient to change the corporate name; an order of the Supreme Court of New York for the First Department in and for the City of New York, authorizing the plaintiff to change its name on or after the 23d day of February, 1895, and to assume the name of the United States Mortgage & Trust Company; and certain powers of attorney executed, one by the company under its original name, and another under its changed name, to William M. Ladd, of Portland, Oregon, were offered and admitted; the execution of the notes and mortgage not having been denied. In so far as the demurrer is effective to present the question going to the want of an averment showing the powers of the corporation relative to loaning money, and taking and accepting mortgages on realty as security, it may be answered that, *prima facie,* contracts of a corporation are valid, there being no presumption of excess of power attaching to them; and parties seeking to avoid or impeach its acts because they are thought to be *ultra vires,* or beyond the scope of its powers, must do so by an affirmative defense, the burden being with them to show such a condition if they would prevail: *Alabama G. L. Ins. Co. v. Central Agr. & Mech. Assoc.* 54 Ala. 73; *America Life Assoc.*

v. *Cook,* 20 Kan. 19. The demurrer is therefore not well grounded.

6. The most usual way, and the one ordinarily accounted sufficient, for establishing the existence of a corporation created by special act of the legislature, is to prove a charter, and user thereunder, in the name therein designated, of the powers, franchises, and privileges granted: 6 Thompson, Corp. § 7689. And it is said that "proof, in any appropriate mode, that the corporation commenced business, coupled with the production of a duly authenticated copy of the charter, is sufficient, *prima facie,* at least, to show that the conditions upon which the charter were to become operative have been performed": Thompson, Corp. § 7696. In *Gaines* v. *Bank of Miss.* 12 Ark. 769, the question came up in manner similar to the present, and the court, through Mr. Justice WALKER, said: "The duly authenticated act of the general assembly of Mississippi read in evidence by the plaintiff was certainly sufficient evidence to prove the grant of corporate power and its extent, but not that it actually went into existence as a corporation. To establish this latter fact, it was not necessary to show a compliance with the conditions of the charter under which it assumed to act, but that the corporation acted and transacted business as such, and for this purpose proof of one or more such acts was sufficient. The execution of the note in this instance by the defendants to the bank as such corporation, which was the only evidence of user, was, in our opinion, sufficient to sustain the issue, so far as proof that the bank went into operation was concerned." To the same purpose are *United States Bank* v. *Stearns,* 15 Wend. 314; *Swartwout* v. *Michigan Air L. R. Co.* 24 Mich. 389, 394.

7. Here we have an exemplification of the act of incorporation by the legislature of the State of New York, which is ample to establish the grant of corporate power. Coupled with this, we have two acts of the legislature, adopted more than twenty-two years later, amendatory of the original act; the resolution of the company relative to a change of its corporate name, and the order and judgment of the Supreme Court of New York authorizing such change; the acts of the company in

executing two powers of attorney to William M. Ladd, one under the name as first incorporated, and the other under its name as changed by authority of the court; the loaning of the money, and the taking and acceptance of the notes and mortgage in question. These acts unmistakably indicate user under the grant, and are *prima facie* sufficient, under the authorities, to show that the conditions prerequisite to the assumption of the power conferred have been complied with. Thenceforth the defendants were put to their proof to overcome the case thus made, and, not having seen fit to enter upon the undertaking, are concluded upon the question of incorporation and compliance with the charter prerequisites to the transaction of business. This case is distinguishable from *Goodale Lum. Co.* v. *Shaw,* 41 Or. 544 (69 Pac. 546), in two important particulars: In that case the attempted incorporation of the plaintiff was under a general, not a special, act; and it appeared that there was no sufficient proof of incorporation, as it was not shown that a copy of the articles of incorporation had been filed, either with the secretary of state, or in the office of the clerk of the county where the concern proposed to conduct its business.

8. As to the refusal of the court to grant leave to further answer the complaint, it had an undoubted discretion in the premises, and it was well exercised, notwithstanding the court may have given an insufficient reason for the ruling. However, were it otherwise, the case coming here for trial *de novo,* this court has a discretion to reverse the cause and remand it, so as to give an opportunity to file a further answer to the merits, but we think the exigencies of the case do not call for such action. The decree of the trial court will therefore be affirmed.                                         AFFIRMED.